# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 23-cr-427 (DLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID SCOTT KUNTZ,** | : | |
| | : | |
| **Defendant.** | : | |

### THE GOVERNMENT'S RESPONSE OPPOSING
### DEFENDANT DAVID KUNTZ'S MOTION TO DISMISS COUNT ONE OF THE
### SECOND SUPERSEDING INDICTMENT

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response opposing Defendant David Kuntz's Motion to Dismiss Count One of the Second Superseding Indictment. (ECF No. 78).

## I.  THE SECOND SUPERSEDING INDICTMENT

On August 21, 2024, the Grand Jury returned a second superseding indictment charging Defendant Kuntz with 18 U.S.C. § 372 (Conspiracy to Impede or Injure Officers), 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), and 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building). *See* ECF 72. Defendant Kuntz was arraigned on the charges from the second superseding indictment at the August 26, 2024 status conference. *See* Minute Entry, August 26, 2024.

## II.  ARGUMENT

Kuntz asks the Court to dismiss Count One of the Second Superseding Indictment, which charges Kuntz with conspiracy to prevent Members of Congress and law enforcement officers by force, intimidation, or threat from discharging the duties of an office, trust, or place of

1

confidence under the United States, and with conspiracy to induce Members of Congress and law enforcement officers by force, intimidation, and threat to leave the place where their duties as officers were required to be performed, in violation of 18 U.S.C. § 372. Kuntz argues that neither Members of Congress (ECF No. 78 at 4-14) nor law enforcement officers (id. at 14-15) are "officer[s] of the United States" for purposes of Section 372. The D.C. District has already rejected Kuntz's arguments in support of his motion to dismiss. *United States v. Nordean et. al.*, 1:21-cr-175(TJK)(ECF No. 586 at 21-30); *see also United States v. Rhodes*, 610 F. Supp. 3d 29, 49-53 (D.D.C. 2022).

### A. Legal Background

Section 372 makes it a crime, punishable by up to six years in prison, for:

> two or more persons to conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties . . .

18 U.S.C. § 372.

As relevant here, to prove a violation of Section 372, the government must prove (1) a conspiracy, (2) that the defendants voluntarily joined the conspiracy, and (3) that conspirators agreed to prevent an officer of the United States from discharging his or her duties "by force, intimidation or threat." *United States v. Beale*, 620 F.3d 856, 864 (8th Cir. 2010); *see also United States v. Ethan Nordean et. al.*, 1:21-cr-175 (TJK)(ECF No. 767).

Congress first enacted an abbreviated form of the conspiracy provision that became Section 372 in the same legislation in which it adopted the seditious conspiracy provision discussed above. *See* Act of July 31, 1861, ch. 33, 12 Stat. 284 (making unlawful a conspiracy

"by force, or intimidation, or threat to prevent any person from accepting or holding any office, or trust, or place of confidence, under the United States"). Section 372's current language first appeared in full ten years later in the Enforcement Act of 1871. *See* Act of Apr. 20, 1871, ch. 22, § 2, 17 Stat. 13 (codified at Rev. Stat. title 70, ch. 2, § 5336 (1878)). That broader language sought "to protect Federal officers by providing for Federal prosecution whenever they were injured because of or in the course of their duties." 1 Op. O.L.C. 274, 276, 1977 WL 18071, at *2 (1977). Like its counterpart in civil law, 42 U.S.C. § 1985(1), Section 372 "safeguards federal officials and employees against conspiratorial acts directed at preventing them from performing their duties." *Thompson v. Trump*, 590 F. Supp. 3d 46, 62 (D.D.C. 2022), *aff'd sub nom. Blassingame v. Trump*, 87 F.4th 1 (D.C. Cir. 2023).

Most reported prosecutions under Section 372 involve threats made to federal officials. *See, e.g.*, *Beale*, 620 F.3d at 864-865 (multiple threatening emails and calls to federal district court judge); *United States v. Rakes*, 510 F.3d 1280, 1285 (10th Cir. 2007) (threatening letter to federal prosecutor); *United States v. Fulbright*, 105 F.3d 443, 446 (9th Cir. 1997) (threatening notices seeking to arrest federal bankruptcy judge), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) (*en banc*); *United States v. Bridges*, 551 F.2d 651, 653 (5th Cir. 1977) (*per curiam*) ("threats and physical and verbal abuse" directed at agents from U.S. Department of the Interior in connection with dispute about hunting season); *United States v. Barber*, 442 F.2d 517, 521 (3d Cir. 1971) (threats and violence toward FBI agents arresting an deserter from the Army). At least one prosecution involved an armed confrontation between defendants and federal authorities; the defendants had refused to return to the courthouse where they had been on trial for tax-related charges. *See United States v. Gerhard*, 615 F.3d 7, 13 (1st Cir. 2010). Section 372 was also successfully prosecuted in a case involving an effort by

defendants to conduct a warrantless arrest of a United States Attorney, who submitted to the arrest without resisting. *See Finn v. United States*, 219 F.2d 894, 897 (9th Cir. 1955) (*per curiam*).

**B. Members of Congress discharge duties under an "office, trust, or place of confidence" and are "officers of the United States" for purposes of Section 372.**

Kuntz is alleged to have violated Section 372 in two alternative respects, each involving a conspiracy by "force, intimidation, and threat." (ECF No. 72 at ¶ 118). First, the Indictment alleges that Kuntz conspired to prevent "any person, that is, Members of the United States Congress and law enforcement officers, from discharging any duties of any office, trust, and place of confidence under the United States." (Id.). Second, the Indictment alleges that Kuntz conspired to induce "any officer of the United States, that is, Members of the United States Congress and law enforcement officers, to leave the place where their duties as officers were required to be performed." (Id.).  Each of those independent bases for conviction is sound.

Members of Congress discharge duties under an "office, trust, or place of confidence under the United States." 18 U.S.C. § 372. Given that Congress enacted these "decidedly expansive" words in the Enforcement Act of 1871, it would "strain[] credulity to think that Reconstruction-Era members of Congress meant to protect low-level Executive Branch employees but not themselves." *Thompson,* 590 F. Supp. 3d at 9*, aff'd sub nom. Blassingame*, 87 F.4th 1. As Judge Mehta concluded, Reconstruction-Era dictionaries defined the terms "office" and "trust" in a manner that readily encompasses Members of Congress. *Id*. at *25-*27. For example, a leading mid-nineteenth century dictionary defined "office" to include "'members of the legislature.'" Id. at *26 (emphasis omitted) (quoting John Bouvier, Law Dictionary, Adapted to the Constitution and Laws of the United States, and of the Several States of the Union 259 (5th ed. 1855)). And the broader terms "trust" and "place of confidence" would also have

included federal legislators. *Id.* at *27. In short, "[t]here can be little doubt" that Section 372's plain text "reaches members of Congress." *Id.*; *accord Rhodes*, 610 F. Supp. 3d at 50.

 While the Enforcement Act's plain terms are decisive, its legislative history further confirms that Members of Congress fall within Section 372's ambit. *See Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1750 (2020) (noting that although "the law's ordinary meaning at the time of enactment usually governs," courts may also consult the legislative history at the time of a statute's enactment to determine "the understandings of the law's drafters as . . . evidence" of how terms in the statute were "ordinarily understood"). While the Senate was debating the statute that ultimately became Section 372 and its civil analogue, Senator Trumbull suggested that the statute would reach, for example, "the *Senator who sits before me* [Mr. Hamilton of Maryland] . . . *while he is here in the discharge of the duties of his office*." Cong. Globe, 42d Cong., 1st Sess. 580 (Apr. 11, 1871) (emphasis added; brackets in original); *see also* Cong. Globe, 42d Cong., 1st Sess. 486 (Apr. 5, 1871) (Rep. Cook: "A citizen of the United States, in any State of the Union, has a right to *vote for any officer of the United States Government*.") (emphasis added); Cong. Globe, 42d Cong., 1st Sess. 492 (Apr. 5, 1871) (Rep. Butler: "I never held any *office of profit or salary* until I held the office of brigadier general. . . . I never held any other except that of Representative of the people.") (emphasis added). Additionally, one member of the House noted that "*officers are elected by the people*." Cong. Globe, 42d Cong., 1st Sess. 484 (Apr. 5, 1871) (Rep. Leach) (emphasis added) (discussing "States with republican forms of government").

 For many of the reasons that Members of Congress discharge duties under an "office, trust, or place of confidence under the United States," Members of Congress are also "officer[s] of the United States" for purposes of Section 372. *See Thompson*, 590 F. Supp. 3d at 90-91, *aff'd*

*sub nom. Blassingame*, 87 F.4th (internal quotation marks omitted); *Rhode*s, 610 F.Supp.3d at 50-53. Kuntz argues otherwise by relying principally on a series of cases involving low-level Executive Branch officials where Section 372 was not at issue. *See* ECF No. 78 at 4-7 (citing *United States v. Hartwell*, 73 U.S. 385 (1867) (clerk in the office of the assistant treasurer of the United States); *United States v. Germaine*, 99 U.S. 508 (1878) (surgeon appointed by the Commissioner of Pensions); *United States v. Smith*, 124 U.S. 525 (1888) (clerk in the office of the collector of customs); *United States v. Mouat*, 124 U.S. 303 (1888) (pay-master's clerk)). Kuntz draws from those decisions the principle that the term "officer" as used in Section 372 must correspond to the term as used in the Constitution's Appointments Clause, U.S. Const. art. II, § 2, cl. 2, or in the Fourteenth Amendment, U.S. Const. amend. XIV, § 3.[1]

But courts have "not reflexively imported constitutional meanings into federal statutes." *Thompson*, 590 F.Supp.3d at 92; *Rhodes*, 610 F.Supp.3d 29, 41-42, 49-50. In *Lamar v. United States*, 240 U.S. 60 (1916), for example, a defendant prosecuted for impersonating a Member of Congress made an argument similar to Kuntz's, and the Supreme Court concluded that the relevant consideration was "obviously . . . not" the Constitution's definition of the term "officer," but instead how the term is used in the "Criminal Code." *Id*. at 65. And in *Steele v. United States*, 267 U.S. 505 (1925), the Supreme Court declined to interpret the term "civil officer of the United States" to "mean an officer in the constitutional sense" but instead found that "in consideration of context," the term is "sometimes given . . . an enlarged meaning." Id. at 507; *see Buckley v. Valeo*, 424 U.S. 1, 269 (1976) (White, J., concurring) ("The Appointments Clause applies only to officers of the United States whose appointment is not 'otherwise provided for' in

---

[1] Kuntz's argument overlooks the Constitution's reference to Members of Congress as Officers" in other provisions. *See, e.g.*, U.S. Const. art. I, § 2, cl. 5 ("The House of Representatives shall chuse their Speaker and other Officers."); U.S. Const. art. I, § 3, cl. 5 ("The Senate shall chuse their other Officers, and also a President pro tempore, in the Absence of the Vice President.")

the Constitution. Senators and Congressmen are officers of the United States, but the Constitution expressly provides the mode of their selection."); cf. *Williams v. Brooks*, 945 F.2d 1322, 1324 n.2 (5th Cir. 1991) ("removal is proper under section 1442(a)(1), however, as a congressman is an 'officer of the United States' within the meaning of that subsection"); *Hill Parents Ass'n v. Giaimo*, 287 F. Supp. 98, 99-100 (D. Conn. 1968) ("A member of Congress is unquestionably an officer of the United States as this term is commonly used and must be considered as such pursuant to Section 1442(a)(1).").

A definition of "officer of the United States" for purposes of Section 372 that omits a Member of Congress would "leave an omission so wide and important" in Section 372 that Congress "ought not to be presumed to have intended" such an interpretation. *Hartwell*, 73 U.S. at 395-396. That is particularly the case where the Enforcement Act's legislative history suggests that Members of Congress were personally affected by the violence that prompted them to draft the Enforcement Act. For instance, a House member testified, "I am reliably informed that not three days ago a member of this House was urged by an official, who is charged with the important duties in connection with the enforcement of the criminal law, not to vote for this bill, for the reason that he could not safely return to his home if he did." Cong. Globe, 42d Cong., 1st Sess. 484 (Apr. 5, 1871) (Rep. Wilson).

The D.C. District rejected Kuntz's reasoning in *United States v. Nordean et. al.*, 1:21-cr-175(TJK)(ECF No. 586). Relying on the same authority as Kuntz – *Hartwell*, *Germaine*, *Smith*, *Mouat*, and *Steele* – Nordean argued that the terms "office" and "officer of the United States" should exclude members of congress because the phrase "officer of the United States" in Section 372's second clause must reflect its constitutional meaning in the Fourteenth Amendment. *Id*. at 26. The court rejected Nordean's limited definition of "officer of the United States" as it was

contrary to the text's plain meaning and the Enforcement Act's purpose. *Id*. at 28. Kuntz provides no meaningful authority to depart from the D.C. District Court's reasoning in *United States v. Nordean et. al.*.

**C.  Law enforcement officers are "officers of the United States" for purposes of Section 372.**

Equally meritless is Kuntz's claim (ECF No. 78 at 14-15) that law enforcement officers are not included within the meaning of Section 372. Kuntz's argument is reliant on his argument that Members of Congress do not qualify as officers as used in Section 372, and that argument fails for the reasons given above.

Kuntz also argues that the scope of "officer" under Section 372 should be construed to exclude law enforcement officers because Congress explicitly states "law enforcement officers" in other federal statutes such as 18 U.S.C. § 111 and 18 U.S.C. § 231(a)(2). (ECF No. 78 at 14). He argues that because Section 372 does not explicitly state "law enforcement officers" or "persons designated in section 1114," that Congress could not have intended to include them in Section 372. (Id.). Kuntz argument also fails on this basis.

In comparison to Sections 111 and 231, Section 372 criminalizes conduct directed towards a broader set of people – low-level Executive Branch officials, FBI agents, federal prosecutors, Department of Interior agents, federal district court judges, etc. *See supra*, Sect. II.A. Congress criminalized more narrow conduct i.e. assaulting federal "officers and employees" by explicitly using more narrow language in Sections 111 and 231. The fact that Congress did not explicitly state "law enforcement officers" in the language of the Section 372 statute cannot be interpreted as its intent to exclude law enforcement from the statute. It only support's a broader construction of the phrase "officer of the United States."

Indeed, the Capitol Police, like Members of Congress, are the type of federal officers that Section 372 was enacted to protect. Under 2 U.S.C. § 1961, the Capitol Police "shall police the United States Capitol Buildings and Grounds," and shall do so "under the direction of the Capitol Police Board." The "purpose" of the Capitol Police Board, in turn, is "to oversee and support the Capitol Police in its mission." Pub. L. No. 108-7, div. H, § 1014(a)(1), 117 Stat. 11, 361 (2003). Section 372 encompasses conduct, such as that alleged here, that involves planning to use force to target federal officials, including federal protective officers. *See Gerhard*, 615 F.3d at 13. *Nordean et. al.*, 1:21-cr-586 (TJK)(ECF No. 586 at 30).

III.    <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant Kuntz's Motion to Dismiss Count One of the Second Superseding Indictment.

<div style="margin-left: 40%;">

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052


By:    */s/ Mindy L. Deranek*
MINDY L. DERANEK
Washington State Bar No. 43085
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
(202) 252-7776
Mindy.deranek@usdoj.gov


By:    */s/ Taylor L. Fontan*
TAYLOR L. FONTAN
IN Bar No. 35690-53
United States Attorney's Office
for the District of Columbia

</div>

601 D Street N.W.
Washington, D.C. 20530
(202) 815-8597
Taylor.fontan@usdoj.gov