UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

DANIEL EDWIN WILSON,

*Defendant.*

No. 25-cv-545 (DLF)
No. 23-cr-427-1 (DLF)

## MEMORANDUM OPINION

Before the Court is the defendant's unopposed Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Dkt. 107. For the reasons that follow, the Court will deny the motion.

**I.   BACKGROUND**

Dan Edwin Wilson was charged with multiple offenses related to his conduct at the United States Capitol on January 6, 2021. Second Super. Info., Dkt. 54. On May 17, 2024, Wilson pled guilty to conspiracy to impede or injure federal law enforcement officers, in violation of 18 U.S.C. § 372 (the "January 6 conspiracy offense"). Plea Agreement, Dkt. 56. At the same time, he also pled guilty to two separate and unrelated charges originating in the Western District of Kentucky in 2022—possession of an unregistered firearm, 26 U.S.C. §§5841, 5861(d), & 5871, and felon-in-possession, 18 U.S.C. §§ 922(g)(1) & 924(a)(2) (the "Kentucky firearm offenses") —that were transferred to this district. *Id.*

During his plea, Wilson, a three-time convicted felon, admitted that he had illegally possessed six firearms and 4,800 rounds of ammunition on June 3, 2022, in the Western District of Kentucky. *See* Statement of Offense ¶ 32, Dkt. 59. Federal agents discovered the firearms and ammunition when they searched Wilson's home pursuant to their investigation of Wilson's actions

at the U.S. Capitol on January 6.  Two of the six firearms were found loaded.  *Id*.  Three were military-style (M-4) rifles, two without visible serial numbers.  *Id*.

At sentencing, the Court imposed three concurrent terms of 60 months' imprisonment for each of the three offenses to which Wilson pled—the January 6 conspiracy offense and the two Kentucky firearm offenses.  *See* Judgment, Dkt. 79.  Wilson did not file a notice of appeal, and the Court's judgment became final on October 2, 2024.  *See* Fed. R. App. P. 4(b)(1); *United States v. Booker*, 613 F. Supp. 2d 32, 35 (D.D.C. 2009).

On January 20, 2025, the President issued "a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021."  Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025) ("Presidential Pardon" or "pardon").  Shortly thereafter, Wilson was erroneously released from custody by the Bureau of Prisons.  *See* Gov't Resp. at 2, Dkt. 103.  Wilson then moved the Court to stay any order from the Bureau of Prisons to re-incarcerate him until the Court could determine whether the Presidential Pardon covered the Kentucky firearm offenses.  Dkt. 100 at 2.  The Court granted Wilson's motion.  *See* Minute Order of January 28, 2025.

Shortly thereafter, on February 6, 2025, the government took the position that Wilson should return to prison because the "plain language" of the pardon does not apply to the Kentucky firearm offenses.  Gov't Resp. at 3, Dkt. 103 ("The defendant should be returned to the custody of the Bureau of Prisons" because the pardon only applies to "convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021.").  Because Wilson's firearms offenses did not occur at the United States Capitol on January 6, 2021, the government asserted that the pardon does not extend to those offenses.  *Id.* at 2.

The government's position at that time was consistent with the position it had taken in other January 6 cases. From January 20 through February 18, the Department repeatedly and unequivocally stated in courtrooms across the country that the "plain" and "unambiguous" language of the pardon does not apply to criminal offenses that did not occur at or near the Capitol on January 6. *See, e.g.*, Gov't Resp. at 2, Dkt. 103 (Mr. Wilson's "[firearm] convictions . . . did not occur at the United States Capitol on January 6, 2021, and thus, *by the plain language of the certificate*, the pardon does not extend to these convictions." (emphasis added)); United States' Resp. to Def.'s Mot. to Vacate Jury Conviction and Dismiss Indictment at 3, *United States v. Kelley*, No. 3:22-cr-118-TAV-JEM-1 (E.D. Tenn. Feb. 18, 2025) (opposing defendant's motion to dismiss based on the "unambiguous language of the pardon" because "[t]he crimes for which an East Tennessee jury convicted the defendant did not occur at or near the United States Capitol on January 6, 2021. They occurred entirely within the Eastern District of Tennessee nearly two years later."); United States' Resp. in Opp'n to Appeal Pursuant to Rule 9(b) at 15–19, *United States v. Martin*, No. 24-7203 (9th Cir. Feb. 14, 2025) (contending that there is no "fairly debatable question" that "Martin's pardon for January 6, 2021 offenses he committed in Washington, D.C., does not reach his separate firearms offense he committed in California at a different time."); United States' Opp'n to Def.'s Mot. to Dismiss at 4, *United States v. Taranto*, No. 23-cr-229 (CJN) (D.D.C. Feb. 11, 2025) ("Taranto's actions in June 2023 in Washington, D.C., were not offenses occurring at the U.S. Capitol on January 6, 2021 . . . [and] are wholly unrelated to the pardon for and dismissal of charges related to January 6, 2021 at the United States Capitol.").

This Court agreed with the government's reading of the pardon. On February 7, 2025, it held that the plain language of the pardon does not cover the defendant's Kentucky firearm offenses. Minute Order of February 7, 2025. The Court therefore ordered Wilson to report as

directed to the Bureau of Prisons to serve the remainder of his 60-month sentence for his firearms convictions. *Id*.

Less than two weeks later, however, the Department began to change its position. *See* United States' Resp. to Appellant's Emergency Mot. for Relief at 3, *United States v. Costianes*, No. 24-4543 (4th Cir. Feb. 19, 2025). To date, there has been limited judicial review of the Department's reversal in position because the government has either moved to dismiss cases under Rule 48 of the Federal Rules of Criminal Procedure, *see, e.g.*, *United States v. Ball*, No. 5:24-cr-97 (M.D. Fla. Feb. 25, 2025) (granting motion to dismiss), or urged remand of pending appeals in order to seek Rule 48 dismissals before district courts, *see e.g.* United States' Time-Sensitive, Unopposed Mot. to Remand for Dismissal, *United States v. Brown*, No. 23-11146 (11th Cir. Feb. 26, 2025); Joint Mot. to Vacate Conviction and Remand for Dismissal, *United States v. Costianes*, No. 24-4543 (4th Cir. Mar. 12, 2025). *See also infra* pp. 13–15 and note 6. *But see United States v. Kelley*, No. 3:22-cr-118-TAV-JEM-1, 2025 WL 757583, at *8–9 (E.D. Tenn. Mar. 10, 2025) (denying defendant's *opposed* motion to dismiss case as covered by pardon).

On February 20, 2025, the defendant filed an unopposed motion to delay his surrender date in order to "reach a resolution" with the government, which had "agreed to take another look at the defendant's legal situation." *See* Def.'s Mot. for Ext. of Time, Dkt. 106. The Court denied the defendant's motion. Minute Order of February 20, 2025.

On February 24, 2025, the defendant filed the instant 28 U.S.C. § 2255 motion seeking vacatur of the Court's judgment on the ground that the Presidential Pardon covers his firearms offenses. *See* Def.'s § 2255 Mot. at 2–4. One day later, the government filed its response, asserting for the first time in this case that the pardon covers Wilson's Kentucky firearm offenses—a 180 degree turn from its earlier position. Gov't Resp. at 2, Dkt. 108. The Department of Justice stated

4

that the government's position has changed because it "received further clarity on the intent of the Presidential Pardon" after consulting with Department leadership. *Id.*

The Court held a hearing on the defendant's motion on February 26, 2025. At that time, the prosecutor defending the government's position reiterated that the Department's about face was based on "further clarity about the presidential intent of the pardons." Rough Hr'g Tr. at 2:19-20. Initially, the prosecutor did not provide a cogent articulation of the pardon's meaning and resisted providing any interpretation that would apply beyond the instant case. Rough Hr'g Tr. at 18:21-22 ("I just want to be careful that I'm not speaking to other cases."); *id.* at 50:6-9 ("I am speaking as to this case and we've discussed how it applies to these circumstances and other circumstances. And I was very careful in our pleadings to say that under these circumstances the pardon applies."). When pressed, the Department eventually defined the pardon as covering "offenses that were charged as a result of search warrants conducted as part of the January 6, 2021 investigation, for which the government did not have pre-existing evidence related to similar offenses." Gov't Suppl. at 2, Dkt. 111; *see also* Rough Hr'g Tr. at 35. At the conclusion of the hearing, the Court stayed its surrender order pending resolution of the instant motion. *See* Minute Order of February 26, 2025. Because the government reversed its position and now agrees with the defendant's reading of the pardon, the Court proceeds without the benefit of adversarial briefing.

## II.     LEGAL STANDARDS

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate the sentence on the ground that "the sentence was imposed in

violation of the Constitution."¹ 28 U.S.C. § 2255(a).  As relevant here, continued incarceration of a prisoner who has been pardoned would infringe upon his Fifth Amendment rights and warrant this Court setting aside its judgment.  *See, e.g.*, *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 274–75 (D.D.C. 2011) (holding that detention of a prisoner without an adequate reason for detention would violate the prisoner's due process rights).

Article II of the Constitution grants the Executive the "Power to grant Reprieves and Pardons for Offences against the United States."  U.S. Const. art. II § 2, cl. 1.  "The Framers vested this power in the President because it is part and parcel with the power to execute the laws and operates as a check on the other two branches."  *Andrews v. Warden*, 958 F. 3d 1072, 1076 (11th Cir. 2020).  The President's pardon power is broad and can be exercised "[s]o long as the President does not use the power to pardon to violate another provision of the Constitution."  *Id.* at 1076 (first citing *Schick v. Reed*, 419 U.S. 256, 264, 266–67 (1927); and then citing *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 276 (1998)).  The President's pardon power is also exclusive— it may not be exercised or altered by either Congress, *see Schick*, 419 U.S. at 266, or the Judiciary, *Ohio Adult Parole Auth.*, 523 U.S. at 276; *see also Dennis v. Terris*, 927 F. 3d 955, 959 (6th Cir. 2019) ("Courts may not alter a President's commutation, except perhaps if the commutation itself violates the Constitution.").

Courts have long exercised their authority to interpret and apply Presidential pardons.  *See, e.g.*, *In re Greathouse*, 10 F. Cas. 1057, 1061 (C.C.N.D. Cal. 1864) (No. 5,741); *Carlisle v. United States*, 83 U.S. 147, 153–56 (1872); *Andrews*, 958 F.3d at 1078.  When exercising this authority, a court's duty is to determine the pardon's effect without expanding or reducing its scope.  *United*

---

¹ Though Wilson is not presently incarcerated, he is "in custody" for the purposes of 28 U.S.C. § 2255. *See Maleng v. Cook*, 490 U.S. 488, 491 (1989).

6

*States v. Rhodes*, No. 22-cr-15 (APM), 2025 WL 309111, at *4 (D.D.C. Jan. 27, 2025); *see Andrews*, 958 F.3d at 1078. A court lacks the authority to correct or reinterpret the terms of a pardon. *See Stetler's Case*, 22 F. Cas. 1314, 1316 (C.C.E.D. Pa. 1852) (No. 13,380) ("We cannot, by judicial construction, expand the pardon of one felony into a pardon of two.").

Because the text of the pardon "governs [a court's] review," courts use ordinary tools of statutory interpretation to determine the meaning of a pardon. *Andrews*, 958 F.3d at 1078 (Pryor, J.); *see also Rhodes*, 2025 WL 309111, at *3; *Ex parte Weimer*, 29 F. Cas. 597, 598 (C.C.E.D. Wis. 1878) (No. 17,362). It is "sensible" for a court to defer to an agency's interpretation of a pardon so long as the agency's "interpretation is not unreasonable" and "the language of the order bears its construction." *Andrews*, 958 F.3d at 1078 (Pryor, J.) (quoting *Udall v. Tallman*, 380 U.S. 1, 4 (1965)) (cleaned up); *see also Rhodes*, 2025 WL 309111, at *3.

### III. ANALYSIS

By its terms, the plain and unambiguous language of President Trump's pardon applies to offenses that occurred at or near the U.S. Capitol on January 6, 2021. Nonetheless, the parties argue that the pardon applies to Wilson's Kentucky firearm offenses, which occurred on a different date—June 3, 2022—and in another place—the Western District of Kentucky. This interpretation, which the government strongly disavowed just weeks ago, contradicts the terms of the pardon and is not entitled to deference.

#### A. The Plain Language of the Pardon

When the language of a document with the force of law is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (cleaned up). A court may not take liberties with unequivocal language nor "manufacture ambiguity where none exists." *United States v. Batchelder*, 442 U.S. 114, 121–22

7

(1979). And "if the law gives an answer—if there is only one reasonable construction of a regulation—then a court has no business deferring to any other reading, no matter how much the agency insists it would make more sense." *Kisor v. Wilkie*, 588 U.S. 558, 574 (2019); *see Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). This principle also holds true for Presidential pardons. So long as the language of a pardon is clear and unambiguous, courts interpret the pardon according to its plain and ordinary meaning. *See In re Greathouse*, 10 F. Cas. at 1061 (citing *United States v. Wilson*, 32 U.S. 150, 160–61 (1833) (Marshall, C.J.)); *Stetler's Case*, 22 F. Cas. at 1316.

The terms of the Presidential Pardon are clear and unambiguous: it "grant[s] a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. at 8331. For an offense to fall within its scope, it must be tethered to a specific time—January 6, 2021—and place—at or near the U.S. Capitol. Because Wilson did not use the firearms he possessed in Kentucky when he conspired to impede and injure officers at the Capitol on January 6, 2021, his firearm convictions are not covered by the Presidential Pardon.

Despite its earlier contrary position, the Department now argues that the pardon applies to "offenses that were charged as a result of search warrants conducted as part of the January 6, 2021 investigation, for which the government did not have pre-existing evidence related to similar offenses." Gov't Suppl. at 2. Wilson takes a similar approach, arguing that the pardon covers his 2022 Kentucky firearm offenses because the "convictions" for those offenses "arose from" or were "related to" the events at the Capitol on January 6. *See* Def.'s § 2255 Mot. at 2. Wilson asserts that because the search warrant which led to his arrest was based on probable cause that the search would yield evidence linking him to the January 6 events, "but for the events of January 6," law

enforcement agents never would have entered his Kentucky home in 2022 and discovered the firearms he unlawfully possessed. *Id.*

The parties ground their overly broad interpretations of the pardon in its "related to" phrase. *See* Gov't Suppl. at 3; Rough Hr'g Tr. at 8; Def's § 2255 Mot. at 2. While "related to" has a capacious meaning, it cannot be "taken to extend to the furthest stretch of its indeterminacy . . . for really, universally, relations stop nowhere." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Rather, the phrase must be understood in context. *See Mellouli v. Lynch*, 575 U.S. 798, 812 (2015).

The Presidential Pardon only applies to "certain" offenses—those "related to events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. at 8331. An "offense" is a violation of the law—a crime. Offense, Black's Law Dictionary (12th ed. 2024). In this context, the meaning of "related to" is well-settled: it restricts the scope of the generic term "offenses" to those "committed in certain factual circumstances." *Friedman v. Sebelius*, 686 F.3d 813, 818–23 (D.C. Cir. 2012) (interpreting statutory provision that applies to "[a]ny individual or entity that has been convicted of a criminal offense consisting of a misdemeanor relating to fraud"); *see also Nijhawan v. Holder*, 557 U.S. 29, 33–36 (2009). And those factual circumstances are tethered to a specific place and time—the events that occurred at or near the U.S. Capitol on January 6, 2021. *Accord Kelley*, 2025 WL 757583, at *3 (holding "that the pardon is primarily constrained by temporal and spatial parameters as defined by the date and location of 'events.'").

The surrounding text of the pardon makes clear that "related to" denotes a specific factual relationship between the conduct underlying a given offense and what took place at the U.S. Capitol on January 6, 2021. For instance, the title of the Presidential Pardon—"Granting Pardons and Commutation of Sentences for *Certain Offenses* Relating to the *Events* at or Near the United

States Capitol on January 6, 2021," 90 Fed. Reg. at 8331 (emphasis added)—strongly suggests that it is the offense itself that must be related to the events of January 6. *Cf. Yates v. United States*, 574 U.S. 528, 539–40 (2015) (looking to the heading of a statutory provision for evidence of the provision's meaning). Relatedly, the pardon directs "the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their *conduct* related to the events at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. at 8331 (emphasis added). That the pardon instructs the Attorney General to exercise its prosecutorial discretion by looking to the *conduct* underlying an indictment—and not the *investigation* which produced that indictment—indicates that the pardon is likewise meant to apply only to defendants convicted of January 6-related offenses—those occurring at or near the Capitol on January 6, 2021.

The structure of the Presidential Pardon lends further support to the conclusion that it was meant to apply to offenses factually tethered to the events of January 6, 2021, rather than to incidental offshoots of the January 6 investigations. At the time the pardon was issued, President Trump drew clear distinctions between certain classes of January 6 defendants. He commuted the sentences of fourteen January 6 defendants, while issuing a full and unconditional pardon for all other January 6 defendants. 90 Fed. Reg. at 8331. The President made no attempt to distinguish between those January 6 defendants who were charged with additional criminal offenses— including threats of physical violence and possession of child pornography, classified information, explosives, and firearms, *see infra* pp. 13–15—as a result of the January 6 search warrants and those who were not.

To be sure, the "related to" language in the pardon leaves open the possibility that certain criminal actions may be close enough in time and place to the events of January 6 so as to fall within the pardon. But the phrase cannot extend so far as to cover *any* criminal offense—no matter

10

how physically or temporally remote to the January 6 Capitol events—solely because some evidence supporting the offense was recovered during a January 6 investigation. Contrary to the pardon's plain language and structure, the parties' reading of the pardon conflates offenses discovered during the January 6 investigations with offenses that occurred at or near the Capitol on January 6. *See Kelley*, 2025 WL 757583, at *7 (noting that the text of the pardon does not include offenses related solely "to the investigation of conduct occurring on January 6, 2021"). Because Wilson's Kentucky firearm offenses bear no relationship to the events that occurred at the Capitol on January 6, 2021, they are not covered by the plain language of the Presidential Pardon.

### B. Deference is Unwarranted

The Court need not defer to the Department's reinterpretation of the Presidential Pardon because the pardon's text is clear and unambiguous. *See Christensen*, 529 U.S. at 588. But even if the language of the pardon were ambiguous, the Court would not accord deference to the Department's most recent interpretation because it is unreasonable and does not reflect its fair and considered judgment. *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 153 (2012).

The Department's latest reinterpretation of the pardon is unreasonable because it is unsupported by the pardon's text. *See Norfolk S. Ry. Co v. Shanklin*, 529 U.S. 344, 356 (2000). The pardon says nothing at all about evidence recovered during an investigation, much less evidence recovered "as a result of search warrants." *Compare* Gov't Suppl. at 2 *with* 90 Fed. Reg. at 8331. Nor does the pardon carve out offenses in which the government had pre-existing evidence related to "similar offenses." *Compare* Gov't Suppl. at 2 *with* 90 Fed. Reg. at 8331. The multiple qualifying clauses the Department asks the Court to add to the pardon stretch its meaning

well beyond what its language can bear. *Andrews*, 958 F.3d at 1078; *see also Stetler's Case*, 22 F. Cas. at 1316.[2]

Moreover, the Department's prosecution decisions defy its broad interpretation of the pardon's scope. *See Friedman*, 686 F.3d at 820. On the one hand, the Department argues that "related to" has a maximally capacious meaning and covers offenses charged as a result of evidence gathered during a January 6 investigation. Rough Hr'g Tr. at 8. On the other, however, it applies the pardon to cover only those offenses that were charged "as a result of evidence seized in a search warrant," as opposed to the January 6 investigation as a whole. *See* Rough Hr'g Tr. at 30–31. The Department further restricts the pardon's scope by excluding offenses for which the government had "pre-existing evidence," even if that evidence related to a distinct (though similar) offense. *See* Rough Hr'g Tr. at 21–23, 35 (explaining that pardon does not cover a child pornography offense because government had preexisting evidence of a child exploitation, but not child pornography, offense); Gov't Suppl. at 2. These selective applications of the pardon undermine the reasonableness of the Department's position.

Apart from being unreasonable, the Department's current interpretation diverges sharply from its previous position, is being inconsistently applied, and appears to be a post hoc rationalization advanced to support its ongoing litigating positions. A change in interpretation that is not based on a well-grounded explanation does not reflect a "fair and considered judgment on the matter in question." *Christopher*, 567 U.S. at 155. In such circumstances, deference is

---

[2] To the extent that the government adopts Wilson's formulation, *see* Rough Hr'g Tr. at 13, it likewise adds words—"convictions" and "arising from"—that do not exist within the pardon's text. *Compare* Def.'s § 2255 Mot. at 2 *with* 90 Fed. Reg. at 8331; *see 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) (a court is "neither to add nor to subtract, neither to delete nor to distort" the words of a document with the force of law).

unwarranted. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988); *cf. Auer v. Robbins*, 519 U.S. 452, 462 (1997).

From January 20, when the President issued the pardon, through February 18, the Department stated repeatedly and unequivocally in courts across the country that the pardon does not cover offenses that were charged based on evidence gathered as a result of a January 6-related search warrant. *See supra* p. 3. But on February 25, the government abruptly reversed its position in this case, with virtually no explanation, and reinterpreted the pardon to mean the opposite. Gov't Resp. at 2, Dkt. 108. The Department insists that its current interpretation is entitled to deference because "indicia of Presidential intent" support its position, Gov't Suppl. at 2–3 (citing *Robertson v. Gibson*, 759 F.3d 1351, 1357–58 (Fed. Cir. 2014)).[3] But those "indicia" appear to stem from decisions the *Department* has made to dismiss certain cases, rather than from any clear expression of the *President's* intent. Gov't Resp. at 2, Dkt. 108.; Rough Hr'g Tr. at 13.

In cases across the country, the Department appears to be shifting positions, making decisions about the scope of the pardon, as it sees fit. Although the government now asserts that the pardon is intended to cover offenses charged as a result of evidence obtained during a January 6-related search, Rough Hr'g Tr. at 23–24, its prosecution decisions show otherwise. Firearm, explosive, and classified information offenses are being dropped as a result of the Presidential

---

[3] Contrary to the position the Department took at the hearing, *see* Rough Hr'g Tr. at 46, *Robertson* does not stand for the proposition that the meaning of a "full pardon" cannot be resolved on the basis of the pardon's plain language alone. In *Robertson*, the Federal Circuit looked beyond the plain language of the pardon at issue because the language of the pardon itself required that inquiry. *See Robertson*, 759 F.3d at 1357–58. The Court noted that the phrase "full pardon" was subject to two limiting phrases that "strongly suggest[ed] that Mr. Robertson's 'full pardon' must be read in the context of the clemency program described by Presidential Proclamation 4313." *Id.* Here, however, no language in the Presidential Pardon at issue suggests that the Court must look outside of the pardon's text to ascertain its meaning.

Pardon, *see, e.g.*, *United States v. Brown*, No. 23-11146 (11th Cir.), while otherwise similar child pornography offenses are not, *see*, *e.g.*, *United States v. Daniel*, No. 3:24-cr-209 (W.D.N.C.); *United States v. Colton*, No. 2:24-cr-29-DAD (E.D. Cal.).

The Department's proffered justifications for the varying positions it has taken in cases across the country are not borne out by the record. As noted, the government defended its continued prosecution of a child pornography case in one district on the ground that some of the evidence in support of that prosecution came from a preexisting child exploitation (but not child pornography) investigation. Rough Hr'g Tr. at 21–23; *see United States v. Daniel*, No. 3:24-cr-209 (W.D.N.C.). At the same time, however, court records show that the government continues to prosecute a child pornography case in another district, even though the evidence in support of those child pornography charges allegedly arose *solely* from evidence seized as a result of a January 6 search warrant. *See* United States' Opp'n to Colton's Mot. to Suppress at 1–7, *United States v. Colton*, No. 2:24-cr-29-DAD (E.D. Cal. Oct. 11, 2024). And in another January 6 case, the government has argued that a defendant's convictions for various unrelated felonies, including possession of classified information, are covered by the pardon, *see* Rough Hr'g Tr. at 33–34, even though the government was aware of information related to the classified information offense *before* it conducted the January 6 search of the defendant's home, *see* United States' Sentencing Mem. at 5–6, *United States v. Brown*, No. 8:21-cr-348 (M.D. Fla. Mar. 24, 2023) (describing Air Force Office of Special Investigations' previous investigation of the defendant regarding the same classified information).

During the hearing in this case, the government justified its continued prosecution of another January 6 defendant charged with a plot to murder January 6 investigators on the ground that the defendant's "conduct was completely different from the events of January 6th of 2021"

and was "the product[] of the defendant's independent volitional acts." Rough Hr'g Tr. at 30:15-16; United States' Suppl. Resp. to Def.'s Mot. to Vacate Jury Conviction and Dismiss Indictment at 1, *United States v. Kelley*, No. 3:22-cr-118-TAV-JEM-1 (E.D. Tenn. Feb. 26, 2025). But that is true of all of the above defendants, as well as Wilson. A defendant cannot be guilty of unlawfully possessing explosives, classified information, child pornography, firearms, or other contraband without having engaged in intentional and "independent volitional acts."

In addition to applying the pardon inconsistently, the government appears to be intent on preserving its ability to take a different position in the future. *See* Rough Hr'g Tr. at 30. During the motions hearing, the prosecutor was reluctant to take any position before this Court that would affect future cases, including ones actively being litigated. *Id.* at 30:6-11, 18:21-22, 50:6-9. But the meaning of a pardon cannot change after the pardon issues. *Cf. United States v. Santos*, 553 U.S. 507, 522 (2008) ("[T]he meaning of words in a statute cannot change with the statute's application. To hold otherwise would render every statute a chameleon . . . ." (cleaned up)). Determinations about the scope of a pardon are made before, not after, its issuance.

Historically, as here, Presidents have issued broad pardons to cover large groups of similarly situated defendants.[4] But such broadly-worded pardons clearly define the class of

---

[4] *See, e.g.*, James Madison, Proclamation No. 19 (Feb. 6, 1815), *in* 1 A Compilation of the Messages and Papers of the Presidents 1789–1897, at 558–60 (James D. Richardson ed., 1897) (pardoning all inhabitants of New Orleans and the island of Barratria for "all offences committed in violation of any [act of Congress] touching the revenue, trade, and navigation thereof or touching the intercourse and commerce of the United States with foreign nations at any time before" January 8, 1815); Abraham Lincoln, Proclamation No. 108, 13 Stat. 737 (Dec. 6, 1863) (granting a full pardon "to all persons who have, directly or by implication, participated in the existing rebellion, except as hereinafter excepted"); Harry S. Truman, Proclamation No. 2676, 10 Fed. Reg. 15409 (Dec. 24, 1945) (pardoning certain World War II veterans "convicted of violation of any law of the United States or the Territory of Alaska, other than the laws for the government of the Army and Navy" prior to their enrollment in the armed services); Jimmy Carter, Proclamation No. 4483, 42 Fed. Reg. 4391 (Jan. 24, 1977) (pardoning "all persons who

individuals and the types of offenses covered by the pardon.  *See* Amnesty—Power of the President, 20 Op. Att'y Gen. 330, 331–32 (1892) (Taft, William H.) (concluding that the President may issue a broad pardon to a class of defendants "without naming them, but describing them as persons committing, or participating in, the same kind of offenses" so long as the pardon is "sufficiently definite with respect to the beneficiaries by a description other than by name").  And in those rare circumstances in which a pardon has been genuinely susceptible to multiple readings, Presidents have issued clarifying proclamations.  *See, e.g.*, Abraham Lincoln, Proclamation No. 111 (Mar. 26, 1864), *in* 6 A Compilation of the Messages and Papers of the Presidents 1789–1897, at 217–18 (clarifying that Proclamation No. 108 does not apply to prisoners but only to those "at large and free from any arrest, confinement, or duress").  The President did not do so here.

Instead, he issued a broad proclamation that divides the class of January 6 defendants into two groups—a large group that was fully pardoned for "offenses related to events at or near the United States Capitol on January 6, 2021," 90 Fed. Reg. at 8331, and a smaller set of fourteen named individuals whose sentences were merely commuted.  The pardon does not separately identify January 6 defendants who were charged with additional unrelated offenses that merely "arose out" of the January 6 investigations, Def.'s § 2255 Mot. at 2.  And, despite questions raised by numerous courts,[5] the President has not issued a clarifying proclamation that states that the pardon is intended to cover some (or all) of those "offenses that were charged as a result of search warrants conducted as part of the January 6, 2021 investigation," Gov't Suppl. at 2.  Nor has the

---

may have committed any offense between August 4, 1964 and March 28, 1973 in violation of the Military Selective Service Act").

[5] *See, e.g.*, Rough Hr'g Tr. at 6–7; Oral Argument at 23:00, *United States v. Brown*, No. 23-11146 (11th Cir. Mar. 6, 2025), https://www.ca11.uscourts.gov/system/files_force/oral_argument_recordings/23-11146_03062025.mp3; Order, *United States v. Costianes*, No. 24-4543 (4th Cir. Feb. 27, 2025).

16

President, or anyone else connected with the pardon drafting process, provided a declaration or other clear expression of his intent. Individual prosecutors' representations in court regarding unspecified "recent clarity," Gov't Suppl. at 2, are not an adequate substitute. *Cf., e.g.*, *United States v. Navarro*, 651 F. Supp. 3d 212, 224 (D.D.C. 2023) (defendant could not make out a claim that the President privately invoked executive privilege when such claim was unsupported by any sworn affidavit or testimony and rested entirely on counsel's representations).

To interpret the Presidential Pardon to apply to *any* type of offense—no matter when or where that offense was committed—simply because evidence of that offense was uncovered incident to a January 6-related search warrant would "def[y] rationality." *United States v. Cook*, 594 F.3d 883, 891 (D.C. Cir. 2010). That might explain why the Department has incorporated a myriad of qualifying clauses into the pardon's text to ensure that certain cases—like those involving child pornography and murder plots, *see supra* pp. 13–15—are not covered by the President's grant of clemency. In any case, the Department's inconsistent litigating positions and its unwillingness[6] (and perhaps inability) to express a clear and stable interpretation of the pardon leads the Court to conclude that its current position is a "*post hoc* justification adopted in response to litigation." *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1242 (9th Cir. 2018) (quoting *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 614 (2013)); *cf. C.I.R. v. Schleier*, 515 U.S. 323, 334 n.7 (1995) ("In view of the Commissioner's differing interpretations of her own

---

[6] The recent proceedings in *United States v. Costianes*, No. 24-4543 (4th Cir.), are illustrative. There, the Fourth Circuit ordered supplemental briefing on the applicability of the pardon to the defendant's firearm conviction, *see* Order, *United States v. Costianes*, No. 24-4543 (4th Cir. Feb. 27, 2025), after the Department sought vacatur of the conviction based on the pardon, *see* United States' Resp. to Appellant's Emergency Mot. for Relief, *supra* p. 4, at 1–5. Despite the Fourth Circuit's order, the government declined to answer the court's questions because it "determined that the more efficient and prudent course—and the one most consistent with President Trump's instructions—is to move to vacate Mr. Costianes's conviction and dismiss the indictment under Rule 48(a)," *see* Joint Mot. to Vacate Conviction and Remand for Dismissal, *supra* p. 4, at 2.

17

regulation, we do not accord her present litigating position any special deference."); *Bowen*, 488 U.S. at 211–12. Because the Department's latest interpretation of the Presidential Pardon lacks a reasoned basis and is not a fair and considered judgment of the pardon's scope, *see Christopher*, 567 U.S. at 153, the Court accords no deference to the Department's current litigating position.

\* \* \*

The Constitution grants the President the exclusive and broad authority to pardon an individual for any and all criminal offenses. This case is not about the reach of that power—President Trump unquestionably has the authority to pardon Wilson for all of his convictions. That authority is clear and virtually unreviewable.

The issue before this Court is whether the language of the Presidential Pardon related to the January 6, 2021 Capitol events covers Wilson's 2022 Kentucky firearm offenses. It does not. By moving to expand the Presidential Pardon beyond any reasonable interpretation, the parties ask this Court to exceed its constitutional authority. President Trump alone has the constitutional authority to pardon Wilson for all of his crimes. He still may do so. But this Court cannot—it is duty bound to enforce the Presidential Pardon *as written*.

## CONCLUSION

For the reasons stated, the defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Dkt. 107, is denied. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 13, 2025